379 So.2d 107 (1979)
In re Inquiry Concerning a Judge, Joseph M. CROWELL.
No. 54200.
Supreme Court of Florida.
December 27, 1979.
Rehearing Denied February 12, 1980.
Richard C. McFarlain, Tallahassee, Special Counsel, Florida Judicial Qualifications Commission, of McFarlain, Bobo, Sternstein & Wiley, Tallahassee, Florida, for complainant.
D.L. Middlebrooks, Leo A. Thomas, Louis K. Rosenbloum and Barry Silber, of Levin, Warfield, Middlebrooks, Mabie, Rosenbloum & Magie, Pensacola, for respondent.
PER CURIAM.
This proceeding is before the Court upon the report and recommendation of the Judicial Qualifications Commission and the petition of the respondent Judge Joseph M. Crowell to reject or modify the commission's recommendation. It is this Court's function to review the commission's findings and conclusions and to render an appropriate decision in this matter. Art. V, § 12, Fla. Const.; Fla.Jud.Qual.Comm'n Rule 23. Our judgment is that Judge Crowell must be removed from office.
Judge Crowell is a judge of the Circuit Court of the First Judicial Circuit of Florida. Before becoming a circuit judge, he served as a judge of the Court of Record of Escambia County and the Municipal Court of the City of Pensacola. In September, 1975, the Judicial Qualifications Commission began an investigation of Judge Crowell's conduct. Following a preliminary investigation of a number of complaints, the commission served upon Judge Crowell a notice of investigation. Fla.Jud.Qual.Comm'n Rule 6. After finding probable cause to believe Judge Crowell had engaged in conduct unbecoming a member of the judiciary, the commission instituted formal proceedings. Id. Rule 7. After a hearing on a number of allegations, the commission permitted the filing of an amended notice and a second amended notice of formal charges. After allowing Judge Crowell time to prepare to respond to the new charges, further hearings were held. The commission has filed its findings and recommendation with this Court. Id. Rule 22.
The second amended notice of formal charges contained eighteen counts of alleged improper conduct. The commission dismissed nine of these due to lack of clear and convincing evidence. The remaining *108 nine counts form the basis for the commission's conclusion that Judge Crowell's conduct demonstrates a present unfitness to hold judicial office and its recommendation that he be removed from the office of circuit judge.
The commission found that at a conference on the custody of a minor girl, Judge Crowell, in the presence of the child, made reference to her grandmother having been a prostitute. Following this hearing, a Division of Youth Services counselor, who placed the child in the custody of her grandparents, was declared by Judge Crowell to be in contempt for violating his custody order. But either the custody order was unclear or the counselor was justified in thinking that custody had been left to his discretion. A short time later, Judge Crowell rescinded the contempt order. The commission concluded that these findings show an arbitrary abuse of the authority of the office of circuit judge.
The commission found that on two occasions, Judge Crowell declared a certain attorney in contempt for being late to court without allowing him to explain and declared further penalties upon his attempts to explain. On one of these occasions no order was entered and the lawyer was not detained. On the other occasion the lawyer was escorted to jail, photographed, fingerprinted, and detained for a few hours until released when another lawyer interceded for him. The commission concluded that Judge Crowell's conduct was arrogant and constituted abuse of the power of the office of circuit judge.
The commission found that Judge Crowell told Division of Youth Services personnel that he wanted a certain juvenile counselor transferred, suspended or fired. He thought the counselor had lied to him and he so accused her when she was appearing before him. The commission found that an order of Judge Crowell requiring periodic written reports from the agency was in retaliation for Division officials' refusal to accede to his demand. The commission concluded that this conduct was arrogant, arbitrary and abusive of judicial power.
The commission found that Judge Crowell issued an order on a custody petition, requiring a change in the custody of certain children, without allowing the custodial parent or his attorney to respond or argue the merits of the custody question. The judge also sentenced the respondent in the case to sixty days in jail for being late, when he had been served notice to appear with his children only minutes before the scheduled hearing. The commission concluded that Judge Crowell failed to observe elementary standards of judicial conduct and that his actions undermined public confidence in the integrity and impartiality of the judicial system.
The commission found that at a hearing on the alleged delinquency of a juvenile, Judge Crowell sought to have the juvenile's attorney stipulate to the identification of certain physical evidence. The attorney had objected to the admission of the evidence because it was identified only by a written laboratory report rather than by an expert witness. The judge ordered a continuance so that the state could bring in an expert, but in retaliation for the refusal to stipulate he ordered the child confined in the juvenile shelter. The juvenile had been in the custody of his father from the time of arrest until the time of hearing, a period of two months. It was the first time the boy had ever been alleged to be delinquent. The boy's father went to Judge Crowell's chambers to ask the reason for detaining his son and was told to leave. The man remained either in the hall or the judge's outer office while talking to the boy's attorney, and was arrested for contempt, fined $500, and detained for two hours. The judgment of contempt was reversed on appeal when Judge Crowell did not respond to the district court of appeal's order for a supplemental record.
The commission concluded that the incident shows a "propensity to summarily adjudicate and incarcerate a citizen ... without according to the accused a right to be heard or any opportunity to defend himself." Such conduct, the commission maintains, results in a loss of the public's confidence *109 in the impartiality of the judicial system.
The commission found that Judge Crowell exhibited "overbearing and unreasonable conduct" at a hearing where he declared an attorney in contempt and assessed a penalty of $750 or thirty days in jail. The order of contempt was never executed. The judge based his ruling on the lawyer's refusal to answer questions but a transcript of the hearing shows that the lawyer attempted to answer Judge Crowell's questions. The commission concluded that this incident amounted to conduct unbecoming a member of the judiciary.
The commission found a "display of intemperate conduct, lack of impartiality, and abuse of the power of his office" in connection with Judge Crowell's courtroom upbraiding of an officer of the sheriff's department. The judge harshly reprimanded the officer for lack of cooperation with the judge's secretary in an administrative matter, without allowing the officer to respond. The commission concluded that this conduct contributed to a loss of public confidence in the judicial system.
The commission reports an incident in which Judge Crowell found access to his reserved parking space at the Escambia County Courthouse Annex blocked by a delivery truck. The driveway providing access to the parking space was also designated as a fire lane. The driver had regularly parked there to make deliveries for years. Judge Crowell asked the driver to move the truck. When the driver did not immediately comply, Judge Crowell had him arrested; he declared that he would require a $5,000 bond and that the truck would be impounded. The driver was detained for over an hour before Judge Crowell released him. The commission concluded that this was arbitrary and capricious conduct which resulted in a measurable loss of confidence in the competence of the judicial system.
In November, 1978, two weeks prior to the first of his hearings before the commission, Judge Crowell spoke to a Department of Health and Rehabilitative Services supervisor whom he happened to meet at the courthouse. The supervisor would be testifying against Judge Crowell. The judge told him that he had better be prepared, that his personal life was not in order and said, "You're going to be sorry. We're coming after you." The commission maintains that this was an attempt to intimidate a witness.
Before reporting findings of fact to this Court, the commission must conclude that they are established by clear and convincing evidence. There were substantial conflicts in the testimony received by the commission. But because the commission was in a position to evaluate the evidence first-hand, its findings of fact "are of persuasive force and should be given great weight." In re La Motte, 341 So.2d 513, 516 (Fla. 1977); In re Kelly, 238 So.2d 565 (Fla. 1970). Our review of the record of the proceedings before the commission reveals that its findings of fact are supported by clear and convincing evidence.
Judge Crowell argues that the incidents established by the evidence do not constitute misconduct unbecoming a member of the judiciary or demonstrating a present unfitness to hold office. He bases this argument in part on the proposition that his departures from proper standards of judicial decorum and temperament were caused by medical problems combined with the stress of his judicial duties.
There are medical reports and expert medical testimony in the record tending to show that a number of medical problems afflicting Judge Crowell could have combined with the stress of being a circuit court judge to bring about the incidents of irascibility and intemperate, irrational behavior. Judge Crowell argues that now that his medical problems are properly diagnosed, they can be controlled through medication and proper diet so that he can continue on the bench without further incident. The evidence tending to show that the result Judge Crowell urges would adequately protect the public interest in an impartial, well-regarded judiciary is not sufficient to overcome the clear and convincing evidence *110 of present and continuing unfitness for judicial office.
Some of the incidents reported to us are susceptible of more favorable interpretation than the commission has provided in its conclusions from the evidence. We do not feel that any vindictive or corrupt motive or moral turpitude has been shown. To the contrary, it appears that Judge Crowell's unfitness is substantially due to his tendency to lose his temper when confronted by the human failings and shortcomings of others. Taken as a whole, however, the incidents in the record show a pattern of conduct over a long period of time, involving persistent abuse of the contempt power, which demonstrates a lack of proper judicial temperament and a tendency to abuse the authority of the office.
Conduct unbecoming a member of the judiciary may be proved by evidence of specific major incidents which indicate such conduct, or it may also be proved by evidence of an accumulation of small and ostensibly innocuous incidents which, [taken] together, emerge as a pattern of hostile conduct unbecoming a member of the judiciary.
In re Kelly, 238 So.2d 565, 566 (Fla. 1970). While some of Judge Crowell's conduct is subject to varying inferences as to its harmfulness or innocuousness, the evidence as a whole shows a continuing pattern of conduct that does not comport with the standards of impartiality and restraint required of judicial officers. We concur in the commission's conclusion that the evidence shows a pattern of conduct violative of the Code of Judicial Conduct, Canons 1, 2 A, 3 A(3), 3 A(4), and 3 B(1).
In the case of In re Kelly, 238 So.2d 565 (Fla. 1970), this Court reprimanded a circuit judge for conduct unbecoming a member of the judiciary, where the record clearly reflected "a pattern of ... hostility toward many attorneys, court officials, and fellow judges, as well as a concerted effort to pamper the public and news media by press releases designed to bolster his personal image at the expense of the judiciary." Id. at 566. The Court admonished the judge to abide by the established principles of judicial conduct in the future. The conduct shown in the present case is more serious, demonstrates present unfitness for judicial office, and warrants removal. See Cannon v. Commission on Judicial Qualifications, 14 Cal.3d 678, 122 Cal. Rptr. 778, 537 P.2d 898 (1975). The Constitution provides for the removal, without regard to malafides, scienter or moral turpitude, of a judicial officer "whose conduct demonstrates a present unfitness to hold office." Art. V, § 12(f), Fla. Const.
It is the judgment of this Court that Judge Joseph M. Crowell be removed from the office of circuit court judge, on the ground of his present unfitness to hold judicial office, as found by the commission and supported in the record by clear and convincing evidence. His removal shall be effective upon this decision becoming final.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.